NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| : | |
| PTK,LLC; LORRAINE KAROUNOS, : | **Hon. Dennis M. Cavanaugh** |
| TEDDY KAROUNOS, and NEW YORK : | |
| PRIME II, INC. : | **OPINION** |
| : | |
| Plaintiffs, : | Civil Action No. 07-cv-2166(DMC) |
| : | |
| v. : | |
| : | |
| BOROUGH OF FORT LEE, a New Jersey : | |
| municipal corporation, DET. WILLIAM : | |
| HUNT, individually and as an officer of : | |
| the FORT LEE POLICE DEPARTMENT, : | |
| TOWNSHIP OF ROCHELLE PARK,  a : | |
| New Jersey municipal corporation, : | |
| RICHARD ZAVINSKY, individually and : | |
| as an officer of the ROCHELLE PARK : | |
| POLICE DEPARTMENT, and JOHN : | |
| DOES 1-10, being persons not yet : | |
| identified, : | |
| : | |
| Defendants. : | |
| : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

          This matter comes before the Court upon motion by Defendants Borough of Fort Lee ("Fort

Lee"), Det. William Hunt ("Det. Hunt") and the Fort Lee Police Department ("Fort Lee P.D."), to

dismiss Plaintiffs' Complaint pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim upon

which relief can be granted, or in the alternative, for a stay of the present proceedings in federal court

upon the completion of state law proceedings in the New Jersey Superior Court, Appellate Division.

Pursuant to Rule 78 of the Federal Rules of Civil Procedure no oral argument was heard.  After

carefully considering the submissions of the parties, and based upon the following, it is this Court's

finding that abstention is appropriate in this case and Plaintiffs' federal suit is hereby **dismissed**.

I.     BACKGROUND

Plaintiff PTK, LLC ("PTK") is a limited liability company formed in 2004 with its principal place of business at 2143 Route 4 East, Fort Lee, New Jersey. (Complaint ¶1).  The LLC was formed for the purpose of acquiring a liquor license to operate a nightclub at the principal place of business' location. (Complaint ¶12).  Plaintiff Teddy Karounos ("TK") was the principal owner of New York Prime II, Inc. ("NY Prime"), which operated as a restaurant with a liquor license for many years. (Complaint ¶13).  In 2004, TK sold NY Prime because of the alleged hostility and harassment from the Township of Rochelle Park ("Rochelle Park") and its police department.  A federal lawsuit ensued because of this alleged harassment which resulted in a $150,000 settlement. (Complaint ¶15).

In February 2004, PTK was formed, with Plaintiff Lorraine Karounos ("LK") as the sole member and TK as the business manager. (Complaint ¶19). Plaintiffs claim that the decision to make LK the sole member of PTK was the result of tax and family considerations without regard to the Alcohol and Beverage Commission ("ABC") scheme. (Complaint ¶25).  In April 2004, TK entered into negotiations with the principals of Hangar, Inc. ("Hangar"), owners of "The Hangar", a nightclub that had been closed for some time located at 2143 Route 4 East, Fort Lee, New Jersey to purchase its liquor license, lease the facility (from the Hangar landlords) and lease the parking facilities in an adjacent lot (from the Hangar landlords). (Complaint ¶¶16-17).

On April 26, 2004, LK executed a lease for the nightclub space and a separate lease for the parking facilities. (Complaint ¶28). On May 30, 2004, PTK filed an application for a transfer of the liquor license from Hangar to itself with the Fort Lee Municipal Clerk.(Complaint ¶29).

2

This transfer application has been the subject of litigation before the Office of Administrative Law ("OAL") and the ABC. (Complaint ¶18). LK maintains that the application for transfer of the liquor license was complete when it was submitted, as she was fingerprinted in March, 2004. (Complaint ¶29). Fort Lee was obligated by statute to act on the transfer application within 60 days of its submission. LK's fingerprints could not be used for testing by the FBI and she was notified of this on August 25, 2004. That same day, LK presented herself for fingerprinting at the Fort Lee Police Station. On September 20, 2004, the FBI notified the parties that LK's fingerprints were cleared of any criminal history. (Complaint ¶¶32-38). On October 18, 2004, Det. Hunt, who was in charge of investigating the transfer application, telephoned and left a message for Paul Kaufman, an attorney who Det. Hunt believed was involved in the subject application process. (Complaint ¶55). Det. Hunt testified at the OAL proceeding that when Mr. Kaufman did not return his call, he deemed the application for transfer of the liquor license abandoned. (Complaint ¶58).

As a result of these events, and there having been no progress with the transfer application, PTK entered into an agreement with Hangar to manage and operate its liquor license at PTK's principal place of business. (Complaint ¶61). ALJ Gerson found, at the OAL proceeding, that the municipality had dragged its feet and that PTK's agreement with Hangar was justified in light of Fort Lee's inaction. (Complaint ¶63). The PTK transfer application never made the Fort Lee agenda, even though same was complete. (Complaint ¶¶64-69).

During the liquor license transfer application process, Plaintiffs applied for and received several permits enabling them to demolish and build additions to operate the nightclub. (Complaint ¶40). Between June and December 2004, Plaintiffs allege that Fort Lee and others

acted in ways to purposefully stall the construction at the PTK nightclub. (Complaint ¶¶40-48).

In April 2005, Det. Hunt issued a report to the applicable governing body recommending that the subject application for transfer of the liquor license be denied. (Complaint ¶75).  In May 2005, Borough Attorney Lee Cohen stated that a noise study was needed as a condition precedent to action on the transfer application, which Plaintiffs submitted on June 15, 2005, reporting that all of PTK's activities conformed to state and local requirements. (Complaint ¶¶78, 80).  There was no action pursuant to the transfer application and on June 30, 2005, Hangar's liquor license was due to expire, so it applied for renewal of its license for the 2005-06 year and paid the fee. (Complaint ¶¶81-83). In previous years, Hangar never had a problem renewing its license. (Complaint ¶¶75, 83). Fort Lee did not schedule a hearing on Hangar's renewal and Judge Gerson ruled that Fort Lee failed to exercise its responsibilities in relation to this renewal. (Complaint ¶¶85, 87).

In June 2005, Hangar sought and received an interim permit from ABC, allowing it to remain open, which Hangar mistakenly believed allowed it to continue operating. (Complaint ¶¶88, 91).  Also in June 2005, Hangar and PTK both filed petitions with ABC to compel Fort Lee to approve the transfer of its license. (Complaint ¶¶89-90).  Hearings were conducted and Fort Lee Borough Attorney Cohen stated that Fort Lee regarded the license as abandoned. (Complaint ¶92).

PTK has been closed for the sale of alcoholic beverages since August 2006. Plaintiffs allege that they have lost an estimated revenue of $1,000,000.00 and profits of $500,000.00. (Complaint ¶95).

Plaintiffs complain that their procedural due process rights were violated when Fort Lee

neglected to act on the transfer application (Complaint ¶¶97-102); that their procedural due process rights were violated when the Hangar renewal application was neglected (Complaint ¶¶103-108); that Defendants have conspired to violate Plaintiffs' rights (Complaint ¶¶109-113); that Plaintiffs' substantive due process rights were violated when Fort Lee neglected to act on the transfer application (Complaint ¶¶114- 119); that Plaintiffs' substantive due process rights were violated when Defendants failed to act on the renewal application (Complaint ¶¶120-125); that Defendants violated the New Jersey Law Against Discrimination ("NJLAD") in treating the application for a liquor license differently because LK, a female, is the principal of PTK (Complaint ¶¶126-128); that Plaintiffs' civil rights were violated by Fort Lee and the Township of Rochelle Park as they acted under the color of state law (Complaint ¶¶129-135); Defendant Zavinsky violated the individual Plaintiffs' rights under the NJLAD (Complaint ¶¶136-139); that Plaintiff NY Prime's procedural and substantive due process rights were violated when Defendants failed to act on the transfer application (Complaint ¶¶140-145, 150-154); that Plaintiff NY Prime's procedural and substantive due process rights were violated when Defendants failed to act on the renewal application (Complaint ¶¶146-149, 155-159); and finally that the decision to not conduct hearings on the NY Prime's transfer and renewal applications was a violation of 42 U.S.C. §1983 (Complaint ¶¶160-163).

On January 11, 2007, Judge Gerson authored a recommended decision stating that the transfer application should be granted, but also stated that the "recommended decision may be adopted, modified, or rejected by the Director of the Division of the Alcoholic Beverage Control, who by law is authorized to make a final decision in this matter." (See Cohen Cert., Ex. D).  On July 13, 2007, the Director of the ABC issued a final decision denying the transfer application.

5

(See Cohen Cert., Ex. E).  On July 19, 2007, PTK filed a Notice of Appeal with the Appellate

Division of the Superior Court of New Jersey. (See Cohen Cert., Ex. F).

II.    **STANDARD OF REVIEW**

In deciding whether or not to abstain from a case, such as here, where parallel state

administrative and judicial proceedings are ongoing, federal courts must analyze their abstention

ability under <u>Burford v. Sun Oil Co.</u>, 319 U.S. 315 (1943) and <u>Younger v. Harris</u>, 401 U.S. 37

(1971).  Under <u>Burford</u>, when there is a need to defer to complex state administrative law

procedures, federal-state comity requires that federal courts abstain from such cases provided that

there are difficult questions of state law bearing on policy problems of substantial public import

whose importance transcends the result in the case at bar, or where exercise of federal review of

the question in a case and in similar cases would disrupt state policy with respect to a matter of

public concern.  In these instances, federal abstention is appropriate.  <u>See New Orleans Public</u>

<u>Service, Inc. v. Council of New Orleans</u>, 491 U.S. 350, 361 (1989).

Under <u>Younger</u>, abstention requires that there be a pending state judicial proceeding, that

said proceeding implicates important state interests, and that the state proceeding affords an

adequate opportunity to raise constitutional challenges. <u>See Middlesex County Ethics Committee</u>

<u>v. Garden State Bar Assoc.</u>, 457 U.S. 423, 432 (1982).  If the above factors are satisfied, it is in

the federal court's discretion to abstain from hearing the matter.

II.    **DISCUSSION**

Defendants move to dismiss Plaintiffs' complaint, or in the alternative, have this Court

abstain from considering the case as there is an ongoing, parallel state and administrative cause of

action. Plaintiffs oppose the motion essentially arguing that there are factual and legal issues

6

interwoven in the subject complaint which will not be addressed by the Appellate Division of the New Jersey Superior Court. (Pls.' Br. p. 2). Further, Plaintiffs argue that the abstention doctrine demands that the state forum be able to address all issues raised in the federal action, citing Yamaha Motor Corp., USA v. Stroud, 179 F.3d 598 (8th Cir. 1999) at length. (Pls.' Br. pp. 3-9). After reviewing the parties' submissions, this Court deems it appropriate to abstain from hearing this matter in light of the Supreme Court precedent in Burford and Younger and subsequent decisions interpreting these abstention doctrines.

The Burford abstention doctrine is embedded in respect for state sovereignty. See Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 723 (1996). To determine whether it is appropriate to abstain from deciding this case under Burford, this Court must analyze each of the Burford factors enumerated above in relation to the facts of this case. First, are there difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar? See New Orleans Public Service, Inc., 491 U.S. at 361.  In this case, it is clear that New Jersey's ABC laws serve important public policy goals in their regulation of liquor licenses in this state.  States have broad discretion over how their liquor licenses are propogated. See Cherbonnie v. Kugler, 359 F. Supp. 256, 260 (D.N.J. 1973).  This case involves the attempted transfer of a liquor license from one plaintiff to another, and the administrative procedure surrounding said transfer.  Clearly, this cause of action involves difficult questions of state, not federal law such that the first factor under Burford is satisfied.

The second Burford factor, whether the exercise of federal review would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern, should be reviewed in light of Chiropractic America v. Lavecchia, 180 F.3d 99, 105 (3d. Cir.

7

1999). Chiropractic America enumerated the factors which a court must consider when determining to abstain under the second Burford factor, which are as follows: 1-whether the regulatory scheme is one of substantial public concern, 2- whether Burford abstention would normally apply to this sort of regulatory scheme and 3- whether federal review of the claim would interfere with state efforts to maintain a coherent regulatory policy. See Id. This Court finds that the Chiropractic America factors are met, thus the second Burford factor is satisfied.

Clearly, New Jersey's regulation of liquor licenses is a matter of public concern.  Burford abstention is appropriate where, as here, the regulatory scheme at issue is a state's system of controlling liquor licenses. The Supreme Court recently held that states should maintain a "uniform system for controlling liquor by regulating its transportation, importation and use." Granholm v. Heald, 544 U.S. 460, 462 (2005). Burford abstention will be applied where, as here, the regulatory scheme of the claim in question, is traditionally left to the states. The third Chiropractic America factor is most apparent when analyzed against the facts of this case because there is an ongoing parallel case in New Jersey's Appellate Division, and this Court's consideration of this case would obviously interfere with the state case. See Chiropractic America, 180 F.3d 105.  As such, all three Chiropractic America factors are met, thereby satisfying the second Burford factor in warranting abstention in this case because federal intervention would directly interfere with New Jersey's regulation of liquor licenses.

The Younger abstention doctrine represents federal-state comity wherein federal courts abstain from cases when a party asserts that its constitutional rights are being violated in a parallel state proceeding. See Younger, 401 U.S. at 45.  Younger abstention requires federal courts to respect the independence and functioning of state courts. See Lui v. Comm'n on Adult

8

Entertainment Establishments of the State of Delaware, 369 F. 3d 319 (3d. Cir. 2004).  The

Supreme Court in Middlesex County Ethics Committee, supra, 457 U.S. at 432, established the

test to determine abstention under Younger as follows: 1- is there a pending state judicial

proceeding; 2- does the proceeding implicate important state issues; and 3- does the state

proceeding afford an opportunity to raise constitutional challenges. Id.  All three factors have

been met here; Younger abstention is appropriate.

  First, Plaintiffs have filed an appeal to the Appellate Division of the New Jersey Superior

Court, which is a pending state judicial proceeding, so the first Younger factor is satisfied.

Second, as mentioned above, regulation of liquor licenses is within the state's power, and absent

extraordinary circumstances, federal courts should not interfere, so the second Younger factor is

satisfied. See Granholm, 544 U.S. 462.  Third, whether the state proceeding affords Plaintiffs the

opportunity to raise constitutional issues is the only factor Plaintiffs assert is in dispute. In doing

so, Plaintiffs cite to Yamaha Motor Corp., 179 F.3d 598 in support of their argument that since

the state judicial proceeding does not involve all issues raised in the federal action, abstention is

inappropriate. (Pls.' Br. pp. 3-4). Defendants correctly argue that Plaintiffs should raise the

constitutional issues asserted in the federal action in the state action instead. (Defs.' Br. p. 13).

State courts are as competent as federal courts to address claims arising under the federal

constitution. See Rizzo v. Goode, 423 U.S. 362, 380 (1976).  The parallel state proceeding allows

the Court to decide all of the issues raised in this case, and as such, the third Younger factor is

satisfied.

  Younger abstention transfers the entire proceeding to the state court for adjudication,

including all of its collateral aspects, so all of Plaintiffs' claims are properly heard in state court.

See Lui, 369 F.3d, 327.  Plaintiffs' claims shall be properly adjudicated in the parallel state court

proceeding.  As this Court finds that Younger abstention is appropriate here as to all of Plaintiffs'

claims, the federal suit must be dismissed.  See Moses H. Cone Memorial Hosp. v. Mercury

Const. Corp., 460 U.S. 1, 10 (1983); see also Lui, 369 F.3d, 327.  In Moses H. Cone, the

Supreme Court observed that where "a stay of the federal suit pending resolution of the state

meant that there would be no further litigation in the federal forum, then the state court's

judgment on the issue would be res judicata...and the stay order amounts to a dismissal of the

suit." Moses H. Cone, 460 U.S. 10.


**IV.** <u>CONCLUSION</u>

　　　　For the reasons stated, it is the finding of this Court that federal abstention from this case is

appropriate under Burford and Younger; therefore, Plaintiffs' federal suit is **dismissed**.   An

appropriate Order accompanies this Opinion.


　　　　　　　　　　　　　　　　　　　　　　　DENNIS M. CAVANAUGH
　　　　　　　　　　　　　　　　　　　　　Dennis M. Cavanaugh, U.S.D.J.

Date:　　　　　March 24, 2008
Orig.:　　　　　Clerk
cc:　　　　　　Counsel of Record
　　　　　　　The Honorable Mark Falk, U.S.M.J.
　　　　　　　File